IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BETH A. COSEY,                     )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      1:11-cv-00121
                                   )
THE    PRUDENTIAL    INSURANCE     )
COMPANY   OF   AMERICA   and       )
BIOMERIEUX, INC.                   )
                                   )
            Defendants.            )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Beth A. Cosey ("Cosey") brings this action for short-term disability ("STD") and long-term disability ("LTD") benefits. Cosey and Defendants, The Prudential Insurance Company of America ("Prudential") and bioMerieux, Inc. ("bioMerieux"), have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 24, 25.) For the reasons set forth below, Cosey's motion will be denied, and Defendants' motion will be granted.

**I.   BACKGROUND**

    **A.   Cosey's Employment and Benefits Claims**

    Cosey was employed for some time by bioMerieux, a medical diagnostics company in Durham County, North Carolina, and was at the time relevant to this dispute a Senior Clinical Marketing

Manager in her mid-forties.[1] (Doc. 25-3 at 2.) Her responsibilities included setting pricing, promotion, and placement over several product lines, developing marketing plans and strategies, and sales promotion. (Administrative Record ("A.R.") at 352, 372–74, 816–17.) She was also required to travel, including domestically several times a month and internationally one to two times a year. (Id. at 352.)

On May 26, 2007, Cosey stopped working following complaints of fatigue, hypotension (low blood pressure), weight loss, and sleep apnea. (Doc. 25-3 at 2.) She submitted a claim for STD benefits to Prudential, an insurance company acting as claims administrator for STD and LTD benefits pursuant to group insurance policies issued to bioMerieux, the plan administrator and sponsor. Prudential initially approved her claim and started making payments on June 5, 2007. (Id.) Effective June 30, 2007, however, it terminated Cosey's STD benefits claim and disallowed LTD benefits on the ground that the medical information received did not support an impairment that would prevent her from performing the material and substantial duties of her regular occupation. (Id.) Cosey appealed the denial, but Prudential upheld its decision via letters dated October 18,

---

[1] In this case, the parties do not dispute the facts contained in the record before the court, only the conclusions to be drawn therefrom. (Doc. 26 at 20.)

2007, January 3, 2008, and July 14, 2008. (Id.)

On June 15, 2008, Cosey was terminated from bioMeriuex. (A.R. at 891.) On July 26, 2008, Cosey filed suit in the United States District Court for the District of South Carolina, seeking to recover her STD and LTD benefits. See Cosey v. bioMerieux, Inc. Short Term Benefit Plan and The Prudential Ins. Co. of Am., C.A. No. 4:08-cv-02670-RBH (D.S.C.). Nine days later, on August 4, 2008, bioMerieux re-hired Cosey in a limited capacity. (A.R. at 36.) During this time, she worked from her home in South Carolina, and her travel was limited to attending regular meetings at the company's Durham site; her international travel would resume beginning April 1, 2009. (A.R. at 375.) Cosey apparently continued in this capacity for some time as her condition seemed to improve, and on January 21, 2009, she notified the federal court that she had settled her lawsuit. An order of dismissal without prejudice was entered that same day, pending consummation of the settlement. (Doc. 25-6 at 4; Doc. 25-7 at 2.) The terms of the settlement have not been disclosed by either party (but the parties eventually filed a stipulation of dismissal with prejudice on June 1, 2009 (Doc. 25-6 at 4)).

Shortly thereafter, however, on March 9, 2009, Cosey again left her employment at bioMerieux. (A.R. at 910.) She cited medical concerns and submitted a second claim for STD and LTD benefits. (A.R. at 942, 936, 761.) In materials submitted to

3

Prudential, she complained of fatigue, sleep disorder, dysautonomia (disease of the autonomic nervous system), myoclonus (muscle twitching), dizziness, and fibromyalgia (body-wide pain and tenderness). (A.R. at 758.) Prudential approved her STD benefits claim on March 24, 2009. (Id. at 942.)

On May 15, 2009, Prudential suspended Cosey's benefits, pending the receipt of additional medical documentation. (Id. at 932.) On July 6, 2009, it notified Cosey that it was terminating her STD benefits because the submitted documentation did not support any continuing impairment. (Id. at 930-31.) Cosey appealed, but Prudential upheld its decision by letter dated February 11, 2010. (Id. at 916.) Prudential also notified Cosey that she was not eligible for LTD benefits. (Id. at 908.)

Cosey filed a second-level appeal, and Prudential again upheld its decision on December 20, 2010. (Id. at 870, 880.) The instant lawsuit followed.

### B.  Relevant Medical History

Since 2007, Cosey has undergone extensive specialty assessments for complaints of overwhelming fatigue, dizziness, and tremors, among other things. She has seen multiple specialists in the areas of neurology, cardiology, endocrinology, and sleep medicine. Specific medical testing has included an electroencephalogram (recording electrical activity

4

of the brain), serology, holter (heart) monitoring, a polysonogram (sleep study), x-rays, magnetic resonance imaging, radiological scans, and tilt table testing. Despite these numerous multi-specialty evaluations, Cosey's physicians have failed to find an underlying cause to adequately explain her symptoms.

Cosey was initially evaluated for fatigue in May 2007 by her primary care physician, Dr. Cara Davis, who stated that Cosey had "no diagnosis/treatment established" and that her medical impairment was "overwhelming fatigue." (Id. at 697.) Cosey subsequently consulted Dr. Sigaravelu Jagadeesan for fatigue, trouble with balance, and tremors in her hands. (Id. at 206.) At this time she was assessed with hypersomnia (excessive daytime sleepiness), an essential tremor, ataxia (lack of muscle coordination), and chronic disequilibrium with no evidence of cerebellar dysfunction. (Id. at 207.) An overnight sleep study revealed mild obstructive sleep apnea. (Id. at 209.) However, it was noted that these results would not explain Cosey's reported level of daytime sleepiness. (Id.)

In October 2007, endocrinology records indicated that Cosey's fatigue was stable, but its origin was still unknown,

and although Cosey reported that her weight fell from 170 to 133[2] pounds due to loss of appetite, she is noted to have "improved 60% over the last few months." (Id. at 559-60.) A neurological evaluation in November 2007 was "relatively unremarkable," and no cause for Cosey's dizziness and fatigue was identified. (Id. at 689.) Further testing at the Diabetes & Endocrine Center noted a vitamin D deficiency but otherwise failed to shed light on Cosey's symptoms. (Id. at 573.) During this time, Cosey also saw Dr. Robert Conder for complaints about cognitive and memory abilities. (Id. at 503.) Dr. Conder found Cosey's neurocognitive abilities to be in the "Above Average to Superior range or greater" and diagnosed her with superior intellectual functioning and somatoform disorder (a psychiatric condition where physical conditions cannot be fully explained by a medical disorder). (Id. at 505.)

Following her return to work at bioMerieux in August 2008, Cosey reported to her cardiologist that she felt much better, was no longer having dizziness or lightheadedness, and was able to work, exercise, and play golf on the weekends. (Id. at 264.) However, on December 8, 2008, she reported to Dr. Davis that she was not feeling well. (Id. at 303.) Dr. Davis noted a mild tremor and poor stress tolerance. (Id.) On March 9, 2009,

---

[2] One of Cosey's doctors noted that Cosey's ideal weight was 137. (A.R. at 572.)

Cosey again left employment at bioMerieux. (Id. at 910.) She reported to Dr. Davis that she was "very tired" and could not "tolerate scheduled activity." (Id. at 314.) She also began seeing Dr. Tammy Costello, a chiropractor, for complaints of hypersensitivity, tremors, and fatigue, among other things. (Id. at 321, 377.) Dr. Costello concluded that, based on Cosey's symptoms, "I don't feel that Mrs. Cosey could handle the everyday needs of work like most individuals." (Id. at 377.)

In May 2009, Cosey saw Dr. Saima Athar for a consultation regarding tremors and fatigue. (Id. at 255.) An evaluation for fibromyalgia and a psychiatric consultation were recommended.[3] (Id.) Her records show she also continued to receive treatment for fatigue and prescription medication to control her tremor. In July 2010, Dr. Davis submitted a one-page letter stating that even though she was unable "to successfully diagnose and treat [Cosey]," Cosey's need to "limit her physical activities," need for "assistance with basic household duties," "limited" ability to travel," and "impaired" "ability to concentrate for a normal

---

[3] The parties appear to assume in their briefs that Cosey was diagnosed with fibromyalgia. However, neither party points to a page in the record confirming this diagnosis, and the court has been unable to locate one. Although the record indicates that Dr. Athar recommended that Cosey consult with a rheumatologist regarding an evaluation for fibromyalgia (A.R. at 255), there is no evidence that this recommendation was ever acted on and no records from a rheumatologist have been located.

workday" resulted in a condition of "complete disability" that was "permanent." (Id. at 376.)

In connection with Cosey's STD and LTD benefits claims, Prudential hired Factual Photo to conduct surveillance of Cosey from January 7-9, 2010. (A.R. at 487.) The resulting video, which the court has reviewed, shows Cosey driving her car to a service station, bending over and removing caps from her tires' valve stems, and helping another person pump air into her tires, all with no apparent distress on January 7, 2010. (Id. at 490.)

In addition to using a surveillance team, Prudential engaged several medical reviewers to assess Cosey's file. In a report from January 18, 2010, Dr. Karyn Akey concluded that Cosey's test results were "generally normal" and "did not provide either individually or collectively a reasonable explanation" of Cosey's reported fatigue symptoms. (Id. at 784.) Dr. Akey thus concluded that Cosey's medical files did not preclude "at least full time sustainable sedentary work activity which include[s] mostly sitting with brief periods of standing and walking, lifting/carrying no greater than [10 lbs.] occasionally." (Id. at 787.) A further evaluation of Cosey's records by a psychiatrist, Dr. Leonard Hertzberg, also concluded that Cosey did not have any functional impairment from March 9, 2009, forward. (Id. at 480.) A neuropsychology review reached similar conclusions. (Id. at 85-87.) Finally, an internal

medicine review found no underlying medical cause for Cosey's reported inability to work, as any abnormalities had either been treated or would not explain Cosey's reported level of incapacity. (Id. at 93–94.)

In September 2010, Prudential ordered a vocational review of Cosey's position to determine her ability to meet the material and substantial duties of her employment. (Id. at 815.) It was noted that when not traveling, Cosey's job was mostly sedentary. (Id. at 817.) However, while traveling, the physical demands could increase to frequent standing and walking and could require the ability to push or carry up to 20 pounds. (Id.) Based on the results of this review, the reports of the medical consultants, and the records from Cosey's treating physicians, Prudential concluded[4] that Cosey's claim for disability benefits was not supported by the underlying record, and her STD and LTD benefits were denied. (Id. at 908, 916, 870, 880.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex

---

[4] bioMerieux, which maintained the final say as to STD benefits (A.R. at 1038), reached the same conclusion. (Id. at 860.)

9

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). But where an adverse party "fails to bring forth facts showing that reasonable minds could differ on a material point then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered." <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks, alteration marks, and citations omitted). When faced with cross-motions for summary judgment, the court will review "each motion separately on its own merits." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003).

### 1. The LTD Benefits Plan

In this case, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 <u>et seq.</u> ("ERISA") controls Cosey's LTD disability claim.[5] On a motion for summary judgment under ERISA, a denial of benefits is reviewed *de novo* unless the benefit plan gives the administrator the discretionary authority to determine

---

[5] <u>See</u> 29 U.S.C. § 1002(1) (defining an ERISA plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability . . . .").

eligibility for benefits.  _Metro. Life Ins. Co. v. Glenn_, 554 U.S. 105, 111 (2008); _Firestone Tire & Rubber Co. v. Bruch_, 489 U.S. 101, 115 (1989).  If the plan does provide discretionary authority to the plan administrator, an abuse of discretion standard of review is used.  _Firestone Tire & Rubber Co._, 489 U.S. at 115.  Therefore, the default standard of review is _de novo_, and an abuse of discretion standard is appropriate only when the plan reveals that discretionary authority is vested in the plan administrator.  _Woods v. Prudential Ins. Co. of Am._, 528 F.3d 320, 322 (4th Cir. 2008).

The Fourth Circuit has determined that no "magic words" are required to vest a plan administrator with discretionary authority.  _De Nobel v. Vitro Corp._, 885 F.2d 1180, 1187 (4th Cir. 1989).  It need only to appear "on the face of the plan documents that the fiduciary has been 'given [the] _power_ to construe disputed or doubtful terms' — or to resolve disputes over benefits eligibility — in which case 'the [fiduciary's] interpretation will not be disturbed if reasonable.'"  _Id._ (citation omitted, emphasis in original).  Thus, discretionary authority is appropriate when the plan indicates a clear intention to delegate final authority to determine benefits eligibility to the plan administrator.  _Gallagher v. Reliance Std. Life Ins. Co._, 305 F.3d 264, 268 (4th Cir. 2002); _Feder v._

11

The Paul Revere Life Ins. Co., 228 F.3d 518, 522-23 (4th Cir. 2000).

In this case, the LTD benefits plan evinces a clear intent to delegate eligibility determinations to the plan administrator, and the appropriate standard of review is therefore abuse of discretion. The LTD benefits plan states that benefits will terminate on the date that an employee fails "to submit proof of continuing disability satisfactory to Prudential." (A.R. at 990.) Contrary to Cosey's contentions, courts in the Fourth Circuit have interpreted similar language to grant discretionary authority to the plan administrator. The issue was first addressed in Gallagher, in which the Fourth Circuit held that language in an ERISA plan did not grant discretionary authority when the plan provided for benefits if the insured "submits satisfactory proof of Total Disability to us." Gallagher, 305 F.3d at 269. The court noted that it was unclear whether the proof submitted must be objectively or subjectively satisfactory, and that only the latter interpretation would result in a finding that there was discretionary authority. Id. The court ultimately determined that the language should be construed against the insurer because an employee could interpret the language "to us" as instructions on where to submit documentation and not as a grant

12

of discretion to the insurer to determine eligibility. Id. at 270.

Since Gallagher, courts have reached a different result when confronted with benefits plans that require satisfactory proof of disability yet omit the "to us" language that made the Gallagher plan ambiguous. For example, in Gecy v. Service Care, Inc., the court found that plan language requiring that proof of disability be "satisfactory to Sun Life" conferred discretionary authority. Gecy v. Serv. Care, Inc., 465 F. Supp. 2d 507, 512 (D.S.C. 2006). The court reasoned that this language did not suggest a location or entity to which a claimant had to submit his claim, but instead indicated that proof of disability must be satisfactory to the insurer for a claim to be paid. Id.; see also Zhou v. Metro. Life Ins. Co., No. 09-CV-01516-AW, 2011 WL 3880460, at *10 (D. Md. Sept. 2, 2011) (finding a clear grant of discretionary authority when the plan provided that documentation must be provided "subject to [the insurer's] satisfaction"); Bartel v. Sun Life Assur. Co. of Canada, 536 F. Supp. 2d 623, 628 (D. Md. 2008) (similarly holding that discretionary authority exists when "[p]roof [of disability] must be satisfactory to Sun Life"); Mitnick v. Sun Life Assur. Co. of Canada, No. MJG-01-669, 2003 WL 21649668, at *5 (D. Md. Mar. 4, 2003) (holding that discretionary authority existed when "proof [of disability] must be satisfactory to SunLife").

13

In this case, the plan specifically states that LTD benefits will be terminated if the employee fails to submit proof of continuing disability "that is satisfactory to Prudential." (A.R. at 990.) This language communicates that benefits will not be paid unless proof of disability is deemed satisfactory by the plan administrator. See Gallagher, 305 F.3d at 269 (noting that discretionary authority is found when a claimant "must submit proof of his disability that is satisfactory to [the plan administrator]"). Therefore, because the LTD benefits plan establishes that proof of disability must be subjectively satisfactory to the plan administrator, the court finds that the plan vests discretionary authority in Prudential and an abuse of discretion review is appropriate.

## 2. The STD Benefits Plan

The parties agree that, unlike the LTD benefits plan, the STD benefits plan is not governed by ERISA.[6] See 29 U.S.C. § 2510.3-1(b)(2) (exempting from ERISA coverage agreements whereby an employer pays an employee's normal compensation out of the employer's general assets during a period in which the employee is physically or mentally unable to perform his

---

[6] Defendants move to strike a document Cosey filed with her reply brief as evidence that the STD benefits plan was not governed by ERISA. (Doc. 39.) In light of Defendants' agreement that the STD benefits plan is exempted from ERISA, Defendants' motion as to this document is moot.

14

duties).    As  such,  the  court  is  not  constrained  by  ERISA  or

another  federal  statute  in  addressing  the  STD  benefit  plan,  and

the  law  of  contracts  will  apply.    See  Hughes  Aircraft  Co.  v.

Jacobson,  525  U.S.  432  (1999);  Lockheed  Corp.  v.  Spink,  517  U.S.

882  (1996).[7]

The  parties  appear  to  agree  that  North  Carolina  breach  of

contract  principles  will  apply  to  the  STD  benefit  plan,  and

neither  party  has  proposed  that  the  contract  need  be  construed

under  the  law  of  a  different  state.    Under  North  Carolina  law,  a

contract  requires  the  court  to  examine  the  contractual  language

for  indications  of  the  parties'  intent.    Lane  v.  Scarborough,

284  N.C.  407,  409-10  (1973).    If  the  plain  language  of  the

contract  is  clear,  the  intention  of  the  parties  is  inferred  from

the  words  of  the  contract  itself.    Walton  v.  City  of  Raleigh,

342  N.C.  879,  881  (1996).    The  object  of  construction  is

therefore  to  determine  the  intent  of  the  parties,  and  "the

contract  must  be  considered  as  an  entirety.  The  problem  is  not

what  the  separate  parts  mean,  but  what  the  contract  means  when

considered  as  a  whole."  Jones  v.  Casstevens,  222  N.C.  411,  413-

14  (1942).

Defendants  argue  that  the  STD  benefits  plan  contains

discretionary  language  that  mandates  an  abuse  of  discretion

---

[7]  The  court  will  exercise  jurisdiction  over  the  STD  benefits  claim
under  28  U.S.C.  §  1367(a).

15

standard of review in assessing Prudential's decision under the contract. The Seventh Circuit has held that even outside the ERISA context, a "contract conferring interpretive discretion must be respected." Comrie v. IPSCO, Inc., 636 F.3d 839, 842 (7th Cir. 2011). The court is inclined to agree. Pursuant to the reasoning adopted by the Seventh Circuit, the Supreme Court's decision in Firestone requires only that, in the ERISA context, a contract conferring interpretive discretion be respected, even if that discretion is exercised by an ERISA plan administrator. Id. at 842. As such, it would be illogical to require that a plan's grant of interpretive discretion be ignored simply because ERISA is not at issue.[8] Id. Therefore, should sufficient discretionary authority be found in the STD benefits plan, the court will use an abuse of discretion review

---

[8] Other circuits have taken a different approach to this issue. The Third Circuit has held that de novo review applied to a "top hat" executive compensation plan even when the plan conferred discretionary authority on a plan administrator not acting as an ERISA fiduciary. Goldstein v. Johnson & Johnson, 251 F.3d 433, 443 (3d Cir. 2001). The Eighth Circuit in another "top hat" case agreed with Goldstein's analysis but also noted that, even under a de novo standard of review, a plan's grant of discretionary authority should be read as part of the contract itself. Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006) (using a de novo standard of review but noting that a "grant of discretion must be read as part of the unilateral contract itself"). In considering these cases, the Seventh Circuit bluntly stated, "[w]e don't get it." Comrie, 636 F.3d at 842. Under Firestone, an ERISA plan administrator's fiduciary status results in de novo review unless the contract specifies otherwise. Id. at 839. Therefore, a grant of discretion must be honored even when that grant confers discretionary authority on an ERISA fiduciary. Id. As such, the court noted, it is "easier, not harder" to honor discretionary authority in a contract than in an ERISA plan. Id.

in order to honor the terms agreed to by the contracting parties. See id.

The court's analysis begins with the language of the STD benefits plan itself. Defendants have relied on page 9 of the plan as a basis for finding discretionary authority. Specifically, page 9 states that benefits will end on the date that an employee "fail[s] to submit satisfactory proof of continuing disability." (A.R. at 1025.) Cosey argues that unlike in the LTD benefits plan, this language fails to clearly grant discretion to the plan administrator. Instead, she contends, this language is more like that used in the benefits plan at issue in Gallagher (which stated that benefits would be paid if the claimant "submits satisfactory proof of Total Disability to us") and could be read to require either objective or subjective proof of disability. Gallagher, 305 F.3d at 269. As such, she concludes, the plan is ambiguous and thus insufficient to confer discretionary authority to require an abuse of discretion standard of review.

Assuming (without deciding) that the language in the STD benefits plan itself is ambiguous regarding discretionary authority, the court's analysis does not end there. Under North Carolina law, the court must determine what the "contract means when considered as a whole." Jones, 222 N.C. at 413–14. In the ERISA context, courts have analyzed the entire spectrum of plan

17

documents, including summary descriptions and accompanying agreements, to determine if the plan grants discretionary authority to the plan administrator. See, e.g., Klebe v. Mitre Group Health Care Plan, 894 F. Supp. 898, 902 (D. Md. 1995) (finding that the "requisite grant of discretion may be derived from any number of plan documents"), aff'd, 91 F.3d 131 (Table), 1996 WL 405220 (4th Cir. 1996). There is no reason not to take a similar approach here. The language of the STD benefits plan should be read in the context of the group insurance contract (A.R. at 956-67) and the Administrative Services Agreement ("ASA") (A.R. at 1036-46), as these documents form part of the entirety of the agreement between bioMerieux and Prudential. See De Nobel, 885 F.2d at 1187 (determining the existence of discretionary authority by looking at all "plan documents").

When assessing the language of the ASA and group contract, it is clear that the parties' contractual intent was to confer discretionary authority on Prudential to make benefits eligibility determinations. The ASA provides that Prudential is given the "discretionary authority to determine eligibility for [STD] benefits." (A.R. at 1038.) The Fourth Circuit has found that a discretionary authority grant in an ASA, even if the document is unsigned, can be used to determine the appropriate standard of review. See Bonolis v. Metro. Life Ins. Co., 100 Fed. App'x 161, 163 (4th Cir. 2004) (per curiam) (upholding the

district court's use of an abuse of discretion standard when "discretionary authority for determining benefit eligibility was conferred to MetLife through language in an [unsigned] administrative services agreement rather than in the long-term disability plan itself").[9] The language of the ASA is unambiguous in conferring discretionary authority on Prudential to make eligibility determinations. See Doe v. Group Hosp. and Med. Srves., 3 F.3d 80, 85 (4th Cir. 1993) (finding that language in a group contract between Blue Cross and an employer conferred discretionary authority when it gave Blue Cross "full power and discretionary authority" to determine benefits eligibility). Given the ASA's unambiguous conferral of discretionary authority, an abuse of discretion standard will be used to assess Prudential's decision regarding Cosey's benefits. See Comrie, 636 F.3d at 842 (using an abuse of discretion review to assess an administrator's decision under a non-ERISA compensation plan because the contract itself unambiguously conferred discretion on the administrator).[10]

---

[9] Unpublished decisions of the Fourth Circuit are not precedential but are cited only for their persuasive authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

[10] While the ASA further provides that bioMerieux "will have the sole and complete authority to . . . handle any appeal of a denied claim

**B.    Prudential's decision to deny benefits under the STD and LTD plans**

The court finds that Cosey has failed to demonstrate a genuine dispute of material fact that Defendants abused their discretion in denying her LTD and STD benefits.

First, contrary to Cosey's assertions, there is no heightened standard for evaluating a denial of LTD benefits after a claimant is approved for short term benefits.  Cosey argues that Prudential's initial decision to grant her STD benefits acts as a determination that Cosey meets the plan's definition of "disabled" and therefore binds Prudential in making later eligibility determinations.  This contention is unsupported.  The Fourth Circuit has previously held that a plan administrator does not abuse its discretion by terminating benefits after a review of the available information reveals that the initial grant of benefits was improper under the plan. Wilson v. Metro. Life Ins. Co., 183 Fed. App'x 286, 292 (4th Cir. 2006) (per curiam), citing Ellis v. Liberty Life Assurance

---

submitted after completion of the first level of appeal, and to make the final claim determination after any such appeal" (A.R. at 1038), Cosey does not challenge bioMerieux's final denial of her STD benefits claim (see, e.g., Doc. 37 at 2-3).  Rather, she only insinuates that the fact that bioMerieux affirmed Prudential's decision the same day Prudential issued its denial of the pending appeal suggests some irregularity.  Because the STD benefits claim is not governed by ERISA, bioMerieux is not bound by ERISA's requirement that reasons be given for the denial.  See 29 U.S.C. § 1133.  bioMerieux nevertheless provided extensive reasons, albeit identical to those provided by Prudential. (A.R. 870.)

20

Co., 394 F.3d 262, 274 (5th Cir. 2005) (holding that there is no higher standard of proof to terminate benefits once granted than is needed to sustain an initial denial of benefits because otherwise insurers would be hesitant to grant STD benefits). Because no heightened standard of review applies when a plan administrator revokes short term benefits, Prudential is not required to prove that Cosey's condition improved before benefits were terminated. See Ellis, 394 F.3d at 274 (holding that after an initial eligibility determination, a plan administrator does not need to obtain proof of change in the claimant's medical condition in order to terminate benefits).

Because no heightened standard of review applies in this case, Prudential's decision to deny Cosey's STD and LTD benefits need only be reasonable. Conkright v. Frommert, 130 S. Ct. 1640, 1651 (2010); Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). To qualify as reasonable, a plan administrator's decision must be the result of "a deliberate, principled reasoning process" and be "supported by substantial evidence." Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995). The court will evaluate whether this standard was met using the non-exclusive factors detailed in Booth v. Wal-Mart Stores, Inc., which include: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree

to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.  201 F.3d 335, 342-43 (4th Cir. 2000).

The court finds that Prudential engaged in a reasoned process in reviewing Cosey's eligibility for benefits and based its decisions on substantial evidence in the record.  It is worth noting at the outset that the mere existence of contradictory evidence in the record does not render the decision of the plan administrator an abuse of discretion. Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999) (finding that an administrator does not abuse its discretion in denying benefits if the record contains conflicting medical reports).  In fact, the existence of a conflicting medical record means that the court should uphold the conclusions of a plan administrator that were reasonable and guided by measured decision-making.  See Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180 (8th Cir. 2001).

In the instant case, the LTD policy provides that for the first two years a claimant is considered disabled if she is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury," is "under the regular care of a doctor," and has "a 20% or more loss in [her] monthly earnings due to that sickness or injury."[11] (A.R. at 430.) The STD policy provides similar language. (Id. at 404.) "Material and substantial duties" are those "normally required for the performance of [the employee's] regular occupation," which "cannot be reasonably omitted or modified." (Id.) A review of the record reveals that Prudential conducted a reasonable evaluation of Cosey's occupation and medical history and determined that these standards were not satisfied.

In assessing whether a disability had been demonstrated, Prudential's decision-making process involved a review of (1) Cosey's medical records, (2) multiple reports from medical reviewers, (3) a vocational review, and (4) surveillance (A.R. at 908–15, 916–21, 870–79, 880–92.) The benefits claims underlying this case arose in March 2009 when Cosey left work at bioMerieux for the second time. (A.R. at 910, 948.) Her initial claim was approved, but benefits were later terminated

---

[11] The LTD and STD plans also provide that after two years of payments a claimant is disabled if she is unable to perform "any gainful occupation" for which she is "reasonably fitted by education, training or experience." (A.R. at 430.) Because Cosey is not "disabled," this provision is not at issue.

on May 15, 2009 due to Cosey's failure to submit medical documentation of her condition. (A.R. at 930.) Following the late receipt of the requested documentation, Prudential reviewed Cosey's medical file and determined that there was no basis for finding that Cosey could not perform the material and substantial duties of her regular occupation. (Id.) Specifically, a Mental Status Exam conducted by Dr. Saima Athar was normal and failed to find any basis for Cosey's anxiety and depression. (Id.) Additionally, although the anti-depressant Zoloft had been prescribed for Cosey's "hypersensitivity," Cosey reported to Prudential that she had chosen to discontinue the medication and had refused a recommended psychiatric exam. (Id.) Cosey's "physical and neurological exam" was also normal, and Cosey had indicated to Prudential that she could "perform and manage [her] regular activities of daily living as well as to drive, play golf, and write." (Id.) Further, Prudential noted that she had never sought a rheumatology consult for fibromyalgia. (Id. at 931.) Cosey had even reported to Prudential that she did not actually have this condition, and, regardless, Prudential determined that she did not meet the diagnostic criteria based on her submitted medical records. (Id.) As such, her benefits were terminated. (Id. at 930–31.)

Following the denial of her STD benefits, Cosey began a first-level appeal of Prudential's decision in November 2009.

24

(A.R. at 927.) In connection with this appeal, Prudential engaged in both clinical and capacity reviews of Cosey and her medical history, as well as surveillance. First, from January 7-9, 2010, Prudential engaged in surveillance of Cosey. The results show that on January 7, 2010, she was able to leave her house, drive for approximately 20 minutes, remove the air caps from her tires, and pump air into her tires. (Id. at 490.) No distress or limitation on her part was apparent from the video. (See id.) Later that month, Prudential engaged Dr. Karyn Akey, a board certified family physician, to review Cosey's medical file and determine if there was any "medically supported functional impairments from 3/9/09 forward, including any restrictions in limitations if appropriate." (Id. at 783.) Dr. Akey noted that the medical records revealed reported long-standing fatigue symptoms that likely had resulted in occupational impairment from May 2007 to August 2008 (a time before the current claim for disability benefits arose). (Id. at 784.) As a result of these symptoms, Cosey had aggressively undergone exhaustive specialty evaluations, including neurology, cardiology, endocrinology, and sleep medicine. (Id.) Dr. Akey noted that test results were "generally normal" and "did not provide either individually or collectively a reasonable explanation" of Cosey's reported fatigue symptoms. (Id.) Any

25

abnormalities were either "described as mild, and/or treated effectively." (Id.)

Beginning in August 2008, the time in which Cosey returned to work at bioMerieux, Dr. Akey found that there was "no indication that during the return to work period which reportedly included 40 hours per week, there was any ongoing impairment which would have precluded this level of work activity." (Id. at 785.) Further, for the period of disability allegedly beginning in March 2009 (the period at issue in this case), Dr. Akey could find no basis for a level of symptom severity which would preclude sustainable work capacity. (Id.) The only treatment records available during the relevant time show that Cosey met with her primary care physician. (Id.) However, Dr. Akey found that these records did not support functional impairment – in June 2009 Cosey reported her fatigue was decreasing, in August 2009 she reported she was not fatigued, in October 2009 she reported increasing fatigue related to the use of beta blockers, and in November 2009 she reported "no complaints" and that her fatigue had lessened since decreasing her medication dosage. (Id.) Dr. Akey also referenced a February 2008 Bruce protocol treadmill stress test, which showed that Cosey had a "good exercise capacity." (Id.) Dr. Akey noted that this result would be "inconsistent with the severity of fatigue and level of impairment which she described

26

at that time . . . [which] brings into question [Cosey's] credibility of symptom severity reporting . . ." (Id.)

Because of the prior demonstrated capacity to work full time in August 2008, the results of the treadmill performance test, and the medical support for improvement in fatigue and any co-morbid conditions, Dr. Akey concluded that the evidence would support "at minimum a PDL defined Sedentary level of work capacity." (Id. at 786.) In addition, Cosey's orthostatic hypotension would support only a restriction of avoiding work at unprotected heights or on ladders, her upper extremity tremor would not support any restrictions, and there was no medical support for Cosey's reported fibromyalgia. (Id.) As such, Dr. Akey concluded that Cosey's medical files showed that her symptoms during the contested period of disability did not rise to the level that would preclude "*at least* full time sustainable sedentary work activity which includes mostly sitting with brief periods of standing and walking, lifting/carrying no greater than [10 lbs.] occasionally." (Id. at 787) (emphasis added).

In addition to Dr. Akey's review, Prudential also commissioned a review of Cosey's medical files by Dr. Leonard Hertzberg, a board certified psychiatrist. (Id. at 474.) The scope of Dr. Hertzberg's review included the treatment notes of at least thirteen different treating physicians, as well as labs and diagnostics. (Id. at 474–75.) Records from Dr. Robert

27

Conder, a neuropsychologist, showed that Cosey had superior intellectual functioning and no cognitive impairment. (Id. at 481.) Further, the records of Dr. Michael Grant, a psychologist, stated that Cosey had undifferentiated somatoform disorder, but no additional treatment or psychological evaluation was recommended. (Id.) In addition, Dr. Grant found that Cosey was not suffering from any anxiety or depression. (Id.) As such, Dr. Grant also concluded that Cosey did not have "impairment on a psychiatric basis." (Id.)

Based on the records of the two psychologists that had evaluated Cosey, Dr. Hertzberg found that there was no "impairment on a psychiatric basis and, correspondingly, there are no supported restrictions and/or limitations applicable on a psychiatric basis." (Id.) Although there was evidence that Cosey was converting stress into physical symptoms, Dr. Hertzberg noted that Cosey had declined a recommended psychiatric evaluation and was not seeking psychiatric treatment. (Id. at 482.) Regardless, Dr. Hertzberg concluded that "the self-reported symptoms are not supported by medical evaluations." (Id.)

Based on the conclusions of Drs. Akey and Hertzberg, who both found no basis for Cosey's self-reported symptoms, and the results of surveillance, Prudential upheld its decision to terminate Cosey's STD benefits on February 11, 2010. (Id. at

28

916, 908.) In a letter denying benefits, Prudential indicated that it had considered the entirety of Cosey's medical record, including the records of her treating physicians. Prudential noted that these records actually corroborated the findings of the medical reviewers, as treatment records for 2009 indicated that Cosey's fatigue was either stable, decreasing, or explained by prescription medication. (Id. at 917–18.) As such, in assessing the entirety of the record, Prudential found that "there are currently no restrictions or limitations in your functioning on the basis of a psychiatric condition, cognitive dysfunction or physical medical condition which would prevent you from performing work activities." (Id. at 920.)

Following the conclusion of her first-level appeal, Cosey filed a second-level appeal of Prudential's decision in May 2010. (Id. at 465.) In support of her appeal, Cosey submitted additional medical records and a letter from her chiropractor stating that Cosey could not "handle the everyday needs of work like most individuals." (Id. at 377.) Cosey also submitted a one page letter from Dr. Davis stating that, although no diagnosis had been made, it was her opinion that Cosey's symptoms resulted in a condition of "complete disability" that was "permanent." (Id. at 376.)

In connection with the second-level appeal, Prudential conducted a vocational review, as well as additional medical

file reviews. First, in September 2010, Prudential conducted a vocational review of Cosey's position. (Id. at 815.) The reviewer concluded that Cosey's job was:

> [A] sedentary occupation while performing duties not related to travel or trade shows. During off site meetings and show (requiring travel) the physical demands could increase to include frequent standing and walking and may require lifting, carrying, pushing/pulling up to 20 lbs. occasionally to carry luggage and supplies. The occupation would not require working at heights, or climbing ladders. Speed and accuracy would be important to the occupation however it is reasonable that accommodations could be made. Examples include proofreading documents, spell check and allowing extra time to complete tasks. Although the majority of time is spent in an office setting at the sedentary physical demand level, travel is a material and substantial duty of the occupation and can require the ability to exert greater than 10 lbs. occasionally and require than occasional standing and walking.

(Id. at 817.) Following this vocational review, Prudential re-submitted Cosey's files to Dr. Hertzberg for additional analysis. (Id. at 97.) Because any new information submitted by Cosey did not include psychiatric assessments or mental health treatment, Dr. Hertzberg concluded there was still no basis for finding that Cosey was functionally impaired from March 9, 2009, forward. (Id. at 102.)

Prudential then engaged Dr. Richard M. Kolbell to perform a neuropsychology review of Cosey's file. (Id. at 82.) In addition to reviewing all available medical files, Dr. Kolbell

noted that Cosey herself had submitted a five-page written declaration chronicling her symptoms. (Id. at 84.) Dr. Kolbell stated that this document was "extremely well organized and coherent, with no evidence of any neurocognitive abnormalities." (Id.) Additionally, in reviewing the reports of Drs. Conder and Grant, Dr. Kolbell agreed that "there is no evidence of frank neurocognitive impairment" and "there is no compelling evidence of anxiety, depression, or any other psychological/emotional conditions evident through the medical record." (Id. at 84–85.) Cosey's tests were all "high-average-to-superior range," and "while examinee may express subjective symptoms of impaired memory, anxiety, and depression, this is simply not borne out through objective evaluation." (Id. at 85, 87.)

Finally, Prudential also engaged Dr. Jacqueline Hess, board certified in Internal Medicine and Occupational Medicine, to review Cosey's file. Dr. Hess analyzed the records of at least fifteen treating physicians, labs and diagnostics, the file review done by Dr. Hertzberg, family statements, and surveillance documents, and ultimately concluded that the medical evidence revealed that Cosey had no functional impairment from March 2009 forward. (Id. at 90–91, 93.) Additionally, no occupational limitations were objectively supported or recommended. (Id. at 93.) Dr. Hess noted that although Cosey had reported symptoms of "extreme fatigue and

31

balance issues," "she has had an extremely thorough evaluation including multiple physical exams which have been unremarkable." (Id. at 94.) The records also revealed that Cosey's tremor had improved significantly with medication. (Id.) Further, cardiac, endocrine, and neurology evaluations were all unremarkable, and "there was no evidence of adrenal insufficiency." (Id.) Even though results of a tilt table test were abnormal, Cosey's own physician had noted it did not explain her reported fatigue symptoms. (Id.) Similarly, a sleep study showed only mild sleep apnea for which no treatment was recommended. (Id.) Additionally, Dr. Hess noted that although Cosey complained of muscle pain that was consistent with fibromyalgia, there was no evidence of a rheumatology evaluation in the record to confirm this diagnosis. (Id.)

Based on the discussed evidence, Prudential again upheld its termination of Cosey's STD and LTD benefits on December 20, 2010. (Id. at 870, 880.) In its letter, Prudential noted that Cosey's regular occupation, Senior Clinical Marketing Manager, required travel as a material and substantial part of the occupation. (Id. at 874.) While performing work activities unrelated to travel, the occupation is categorized at a sedentary level of physical demand. (Id.) Travel could increase the demands of this occupation to a light level of physical demand "including frequent standing and walking and the

32

ability to lift, carry, push, and/or pull objects weighing 20 pounds on an occasional basis." (Id.)

Based on the medical record and the reports of the medical reviewers, Prudential determined that, because Cosey did not have any functional impairment from May 2009 forward, there was no medical reason why Cosey could not perform the material and substantial duties of a Senior Clinical Marketing Manager, including travel. (Id. at 878-79, 892.) Specifically, after reviewing the appeal documents, Prudential determined that

> there are no medically supported restrictions or limitations in [Cosey's] functioning from a psychiatric, cognitive or physical perspective. In the absence of medically supported restrictions or limitations in Ms. Cosey's functioning, it is maintained she does not satisfy the policy definition of disability beyond May 14, 2009. Ms. Cosey has reported her current symptoms prevent her from working and include severe fatigue, tremor, difficulty sleeping, dysautonomia, cognitive dysfunction, memory difficulties, and dizziness . . . However, the medical data currently on file reflects [Cosey's] self-reported symptoms are out of proportion to the medical evidence. Specifically, the majority of Ms. Cosey's physical examinations have been normal. Further, although Ms. Cosey is noted to have an essential tremor, records indicate this is a longstanding condition with which Ms. Cosey has worked in the past. This condition is also noted to have improved with medication. Additionally, the neuropsychological testing performed reflects [Cosey's] intellectual and cognitive functioning was in the superior range in contrast to the disabling cognitive dysfunction reported [].

(Id. at 878-79, 892.)

33

The court cannot say that this conclusion was an abuse of discretion. The record shows that Prudential utilized multiple medical reviewers who all independently determined that Cosey did not show evidence of any functional impairment during the relevant time period. Prudential's experts examined the entirety of the file and concluded that none of Cosey's multiple medical tests, including an electroencephalogram, serology, holter monitoring, a polysonogram, x-rays, an MRI, radiological scans, and tilt table testing, revealed a source for her subjective symptoms. Even when the results of specific tests were abnormal, treating physicians and medical reviewers consistently noted that the results still failed to explain the extent of Cosey's self-reported symptoms. As such, no occupational limitations relevant to her position as Senior Clinical Marketing Manager were recommended by the medical reviewers.[12]

Although Cosey calls into question the motivations of Prudential's consultants,[13] courts have found that retaining an

---

[12] Although Dr. Akey found that Cosey's orthostatic hypotension would preclude her from working at unprotected heights or on ladders (A.R. at 786), Prudential's vocational review found that the position of Senior Clinical Marketing Manager "would not require working at heights, or climbing ladders." (Id. at 817.)

[13] Defendants move to strike a document Cosey filed with her reply brief showing that one of Defendants' medical reviewers, Dr. Hertzberg, has a professional history of reviewing files for the insurance industry. (Doc. 39.) As a threshold matter, motions to

expert to review files is evidence of the plan administrator behaving prudently. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 602-03 (5th Cir. 1994) (reliance upon an independent medical record review did not constitute an abuse of discretion). Further, Cosey's only charge against Prudential's reviewers is that they are likely to make a finding of "not disabled" to save Prudential money. However, this type of unsupported allegation has been rejected as a basis for finding that a plan administrator acted unreasonably. See Rizzi v.

---

strike apply to pleadings. Fed. R. Civ. P. 12(f) ("The court may strike *from a pleading . . . .*") (emphasis added); Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co., 244 F.R.D. 317 (E.D. Va. 2007). However, the court will not consider the document. The Fourth Circuit has held that when a district court uses an abuse of discretion standard to review an ERISA plan administrator's decision, the reasonableness of that decision must be based on the facts known to it *at the time* of that decision. Elliott, 190 F.3d at 608; Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994). If the court believes that the administrator did not possess adequate evidence on which to base its decision, a remand is the appropriate course of action. Elliott, 190 F.3d at 609. Cosey did not submit this document regarding Dr. Hertzberg's professional history to Prudential during its review process, and therefore Prudential could not have relied on it while making its decision. Thus, the court will not consider this document, which was never before Prudential during its review process, to assess the reasonableness of Prudential's decision. Further, this is not a case where a remand is appropriate. Considering that three other medical reviewers, all in different specialties, reached the same conclusion as Dr. Hertzberg, the court cannot say that Prudential did not have adequate information before it when it made the decision to terminate Cosey's benefits. Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1008 (4th Cir. 1985) (stating that remand should be used "sparingly" and is most appropriate when the fiduciary ignores information required to be taken into account by the plan itself). Additionally, even if the court were to consider information regarding Dr. Hertzberg's professional history, it still would not find an abuse of discretion because of the substantial additional evidence relied on by Prudential in making its decision.

35

<u>Hartford Life and Accident</u>, 383 Fed. App'x 738, 750 (10th Cir. June 18, 2010) (finding that unsupported allegations of bias against doctors retained by the insurance company to review plaintiff's medical file did not provide a reason to doubt the insurance company's otherwise reasonable opinions); <u>Sweatman</u>, 39 F.3d at 601 n.14 (rejecting allegations of bias against medical reviewers based on the fact that they are paid for their work by the insurance company). Thus, there is no basis for finding that Prudential's use of reviewing experts rendered its decision-making process unreasonable.

Furthermore, there is no requirement that Prudential, or this court, credit Cosey's subjective complaints when objective medical evidence of her disability is entirely lacking. Both the STD and LTD benefits plans state that the claimant is required to submit "proof" of disability to receive benefits. (A.R. at 990) (LTD benefits plan); (<u>id.</u> at 1025) (STD benefits plan). The use of the word "proof" communicates that there must be some objective basis to the claimant's complaints, or plan administrators "would have to accept all subjective claims of the participant without question." <u>Williams v. UNUM Life Ins. Co. of Am.</u>, 250 F. Supp. 2d 641, 648 (E.D. Va. 2003). "[I]t is hardly unreasonable for the administrator to require an objective component to [] proof [of disability]." <u>Maniatty v. UNUM Provident Corp.</u>, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002).

36

Thus, even in cases involving conditions like chronic fatigue syndrome or fibromyalgia, which have highly subjective symptoms, the insurer is still entitled to require objective proof of physical limitation. Williams v. Aetna Life Ins. Co., 509 F.3d 317, 322 (7th Cir. 2007); Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 17 n.5 (1st Cir. 2003); Van Valen v. Emp. Welfare Benefits Comm. Northrop-Grumman Corp., 741 F. Supp. 2d 756, 763 (W.D. Va. 2010).

In this case, no objective evidence of physical limitation exists. Neither Cosey's treating physicians nor the medical reviewers could identify a medical diagnosis responsible for her overwhelming fatigue. Even Dr. Davis, who authored a letter in support of Cosey's disability claim, stated that she was unable to "successfully diagnose" Cosey. (A.R. at 376.) In her medical review, Dr. Akey noted that the medical data revealed that "extensive multispecialty evaluations [] have reasonably excluded and/or treated any underlying physical condition which would potentially contribute to the reported severity of fatigue symptoms." (Id. at 785.) Similarly, Dr. Kolbell found that Cosey's complaints were "simply not borne out through objective evaluation" (id. at 87) and Dr. Hess concluded that there was no objective basis to support Cosey's occupational impairment. (Id. at 93.) As such, Prudential did not abuse its discretion in crediting the lack of objective evidence of disability over

37

Cosey's subjective symptoms. _Maniatty_, 218 F. Supp. 2d at 504 (finding that insurer did not abuse its discretion when claimant complained of debilitating back pain but all medical tests were unremarkable or failed to explain subjective symptoms).[14]

Additionally, although Cosey argues that Prudential disregarded materials submitted by her treating physicians, the record indicates that this is not the case. In rejecting Cosey's second-level appeal, Prudential summarized the information used by the company to determine that Cosey was not eligible for benefits. (A.R. at 870–92.) Included in this summary were the statements of Drs. Davis and Costello, both of whom expressed their belief that Cosey was unable to work. (_Id._ at 877, 888); _see also_ (_id._ at 377) (statement of Dr. Costello, Cosey's chiropractor, that Cosey cannot "handle the everyday

---

[14] In _Maniatty_, the court noted that although the claimant had undergone specialty testing for her pain symptoms, diagnostic testing had found no basis for these complaints. _Maniatty_, 218 F. Supp. 2d at 504. The court reviewed the insurer's decision to terminate disability benefits under an abuse of discretion standard, but also stated that, because of the lack of objective evidence corroborating physical limitations, it would still uphold the insurer's decision under a _de novo_ review. _Id._ at 504. The same situation exists here. The administrative record reveals no objective basis for Cosey's reported symptoms. The court has undertaken a thorough review of Cosey's medical history and the conclusions of Prudential's medical reviewers. With the exception of Drs. Davis and Costello, none of Cosey's treating physicians (which appear to number upwards of fifteen) found that Cosey had physical limitations. The medical reviewers reached the same conclusion. Additionally, Dr. Davis was forthcoming in stating that she has been unable to diagnose Cosey or find a reason for her complaints (A.R. at 376.) As such, even under a _de novo_ review, the court would still find that Cosey failed to meet the definition of disability in the STD and LTD benefits plans.

needs of work"); (id. at 376) (statement of Dr. Davis, Cosey's primary care physician, that there is "no occupation that [Cosey] can sustain at this time"). Prudential indicated that these letters were evaluated as part of the totality of the record, along with medical data from Cosey's other treating specialists and reports from the independent medical reviewers. See Scott v. Eaton Corp. Long Term Disability Plan, 454 Fed. App'x 154, 160-61 (4th Cir. 2011) (per curiam) (holding that the plan administrator did not abuse its discretion in denying benefits when statements of a treating physician were contradicted by data from other treating specialists and the conclusions of medical reviewers).

Further, ERISA does not require a plan administrator to give special deference to the opinions of a claimant's treating physicians, nor does it impose a burden of explanation on plan administrators when they "credit reliable evidence that conflicts with a treating physician's evaluation," such as the reports of retained experts. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (1965); Frankton v. Metro. Life Ins. Co., 432 Fed. App'x 210, 215-16 (4th Cir. 2011) (per curiam) (holding that a district court acted reasonably in crediting independent medical reviews over statements of the plaintiff's treating physician). Even though Cosey's primary care physician and chiropractor may have accepted her subjective complaints,

the plan administrator is not required to do so when, as in this case, there is a lack of objective medical evidence. <u>Williams</u>, 250 F. Supp. 2d at 649 ("In this case, the conclusions of plaintiff's treating physicians were based almost entirely on plaintiff's subjective complaints of pain for which there was insufficient objective corroboration. Although a treating physician must accept a patient's subjective complaints, the same is not required of a plan administrator in determining eligibility for benefits.")

Cosey also contends that Prudential has a conflict of interest in its decision-making because it both evaluates and pays the LTD benefits claims. Defendants do not directly dispute this. Where a conflict exists, its presence is but one factor to be considered in assessing the reasonableness of an ERISA plan administrator's discretionary decision. <u>Carden v. Aetna Life Ins. Co.</u>, 559 F.3d 256, 261 (4th Cir. 2009).

Prudential serves in the dual role of determining eligibility for LTD disability benefits and paying them, thus creating a structural conflict of interest. (Doc. 26 at 6-7; A.R. at 1038-46.); <u>see</u> <u>Williams v. Metro. Life Ins. Co.</u>, 609 F.3d 622, 632 (4th Cir. 2010) (noting that a conflict of interest exists where the plan administrator is responsible for both evaluating eligibility for benefits and paying claims). However, there is no evidence that this conflict of interest

outweighs Prudential's reasoned review process. The reports of four medical examiners conclude that, based on the entirety of Cosey's medical records, no basis exists for finding that Cosey is disabled under the terms of the policy. These reports include detailed findings based on the totality of the medical record and are corroborated by records from Cosey's physicians which reveal no objective basis for her symptoms. Thus, the court concludes that any conflict of interest fails to outweigh the substantial evidence supporting Prudential's reasoned and principled decision-making process. See Frankton, 432 Fed. App'x at 216 (holding that a conflict of interest did not outweigh evidence of the insurer's accurate claim assessment when the insurer relied on the detailed reports of two independent medical examiners).

Finally, Cosey contends that Prudential's conclusion that Cosey could perform the material and substantial duties of a Senior Clinical Marketing Manager contradicts the medical and vocational findings in the record. Cosey argues that Dr. Akey's medical review concluded that Cosey "'demonstrated full time work capacity' only 'in the absence of travel responsibilities'". (Doc. 32 at 4.) Cosey alleges this is incompatible with Prudential's vocational analysis, which found that travel was a material and substantial part of her occupation. (A.R. at 817.)

41

Cosey has completely mischaracterized Dr. Akey's findings. Dr. Akey did not conclude that Cosey could only sustain full time work in the absence of travel; instead, with regard to fatigue symptoms, Dr. Akey noted that for the period beginning in March 2009, Cosey's improvement and prior tests supported "*at minimum* a PDL defined Sedentary level of work capacity." (Id. at 786.) (emphasis added). Taking into account records related to all symptoms, Dr. Akey concluded that Cosey "has *at minimum* a sustainable level of full time sedentary work capacity." (Id. at 787.) (emphasis added). Dr. Akey never recommended that travel be an occupational limitation for Cosey but instead found that, based on the medical evidence, there was no reason to believe that Cosey could not *at least* perform sedentary work.

Further, Dr. Akey's report is corroborated and expanded by the reports of the other medical reviewers. Dr. Hertzberg, Dr. Kolbell, and Dr. Hess all concluded that Cosey had no functional impairment and that there were no medically supported limitations on her work capacity. (Id. at 481, 87, 93.) Thus, based on the reviewers' conclusions, Cosey faces no occupational limitations at all and could work in any possible occupation, including one involving travel. As such, Prudential did not abuse its discretion by finding that Cosey could perform the role of Senior Clinical Marketing Manager, even though its travel requirements could include "frequent standing and walking

42

and may require lifting, carrying, pushing/pulling up to 20 lbs." (A.R. at 817.)

Therefore, because the record indicates that Prudential credited all relevant information, including data and statements from Cosey's treating physicians, medical expert reviews, vocational analysis, and surveillance, the court finds that Defendants' decision to terminate Cosey's LTD and STD benefits was not an abuse of discretion.[15]

## III. CONCLUSION

For the reasons set forth herein, the court finds that Cosey has failed to demonstrate a genuine dispute of material fact and that Defendants are entitled to judgment as a matter of law.

---

[15] Prudential also claims that the "pre-existing condition" limitation in the LTD plan serves as an additional bar to LTD benefits in this case. Cosey argues that the pre-existing condition exclusion does not apply because her prior lawsuit in the District of South Carolina was not settled until after she was terminated and re-hired by bioMerieux. However, Cosey fails to cite any authority for this proposition. Neither party has provided the court with the terms of the settlement of the prior lawsuit, and, therefore, it cannot be determined if continued coverage was a term of this agreement. Ordinarily, the filing of a dismissal with prejudice acts as *res judicata* as to any claim that was, or could have been, brought. See, e.g., Johnson v. Ashcroft, 445 F. Supp. 2d 45, 50 (D.D.C. 2006) (applying *res judicata* to claims that arose between litigants before the effective date of their underlying settlement agreement); George v. McClure, 245 F. Supp. 2d 735, 738 (M.D.N.C. 2003) (stating that a dismissal with prejudice is an adjudication on the merits and has a *res judicata* effect). However, because Prudential's decision-making process regarding Cosey's benefits claim was not an abuse of discretion, the court need not consider the application of the "pre-existing condition" limitation in this case.

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (Doc. 25) be DENIED and Defendants' motion for summary judgment (Doc. 24) be GRANTED.

IT IS FURTHER ORDERED that Defendants' motion to strike (Doc. 39) be DENIED.


_____/s/   Thomas D. Schroeder_
United States District Judge

September 30, 2012